UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JERRY R. NORMAN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. SA-10-CA-849-XR |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of the Social Security | § | |
| Administration, | § | |
| | § | |
| *Defendant*. | § | |

**ORDER**

On this date, the Court considered the Report and Recommendation filed by the Magistrate Judge concerning Plaintiff's appeal of the Commissioner's decision to deny his Social Security benefits.[1] After careful consideration, the Court will ACCEPT the Magistrate Judge's recommendation, REVERSE the Commissioner's denial of benefits, and REMAND the case to the Commissioner for further deliberation in accordance with this decision.

**INTRODUCTION**

Plaintiff Jerry Norman seeks review and reversal of the administrative denial of his application for Disability Insurance Benefits ("DIB") for a period of disability by the Administrative Law Judge ("ALJ"). Norman contends that the ALJ erred by finding him not disabled. Norman maintains that the ALJ's determination of his residual functional capacity ("RFC") was not supported by substantial evidence. Additionally, Norman alleges that the ALJ failed to follow the

---

[1]Docket Entry #15.

1

correct legal standards in assessing the weight to be given a physician's opinion. If the Court found either of these claims to be valid, Norman asserts that the Court should reverse the decision of the defendant, the Commissioner of the Social Security Administration ("SSA"), denying his benefits. Norman asks the Court to reverse the decision and to render judgment in his favor. In the alternative, Norman asks the Court to remand this case for further factual development.

## ADMINISTRATIVE PROCEEDINGS

Norman fully exhausted his administrative remedies prior to filing this action in federal court. Norman filed an application for Title II DIB and SSI benefits on September 13, 2006, alleging disability beginning June 1, 2003. The Commissioner denied the application initially and on reconsideration. Norman then asked for a hearing. A hearing was held on July 23, 2008 before Administrative Law Judge Wade B. Morrison. The ALJ issued a decision on November 5, 2008, concluding that Norman was not disabled within the meaning of the Social Security Act (the Act) from June 1, 2003 through the date of his decision. Norman asked for review of the decision. The SSA Appeals Council concluded on August 20, 2010 that no basis existed to grant review of the ALJ's decision. The ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g). Norman filed this action seeking review of the Commissioner's decision on October 18, 2010.[2]

## ANALYSIS

### Standard of Review

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the

---

[2] *See* Pl.'s Complaint, Oct. 18, 2010 (Docket Entry #3).

2

Commissioner applied the proper legal standards in evaluating the evidence.[3] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[5]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[6] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[7] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[8] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work

---

[3]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[4]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[5]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[6]*Martinez*, 64 F.3d at 173.

[7]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[8]*Martinez*, 64 F.3d at 174.

experience.[9]

## Entitlement to Benefits

Every individual who is insured for disability benefits, has not reached retirement age, meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive DIB.[10] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[11] A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she applied for work.[12]

## Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[13] A finding that a claimant is disabled or not disabled at any point

---

[9] *Id.*

[10] 42 U.S.C. § 423(a)(1).

[11] 42 U.S.C. § 1382c(a)(3)(A).

[12] 42 U.S.C. § 1382c(a)(3)(B).

[13] 20 C.F.R. §§ 404.1520 and 416.920.

4

in the process is conclusive and terminates the Commissioner's analysis.[14]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[15] If so, the claimant will be found not disabled regardless of his medical condition or his age, education, or work experience.[16] The second step involves determining whether the claimant's impairment is severe.[17] If it is not severe, the claimant is deemed not disabled.[18] In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[19] If it meets or equals a listed impairment, the claimant is deemed disabled without considering his age, education, or work experience.[20] If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of his past work.[21] If the claimant is still able to do his past work, the claimant is not disabled.[22] If the claimant cannot perform his past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability to do other work, given his residual capacities, age,

---

[14]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[15]20 C.F.R. §§ 404.1520 and 416.920.

[16]*Id.*

[17]*Id.*

[18]*Id.*

[19]*Id.*

[20]*Id.*

[21]*Id.*

[22]*Id.*

education, and work experience.[23] If the claimant cannot do other work, then he will be found disabled.

The claimant bears the burden of proof at the first four steps of the sequential analysis.[24] Once the claimant has shown that he is unable to perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and nonexertional limitations, able to maintain for a significant period of time.[25] If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work.[26]

**Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached his decision at step four of the evaluation process. At step one, the ALJ determined that Norman had not engaged in substantial gainful activity since his alleged onset date. At the second step, the ALJ found that Norman had the severe impairments of lymphadenopathy, lumbar spondylosis, hypertension, obesity and obstructive sleep apnea ("OSA"). At the third step of the evaluation process, the ALJ found that Norman's impairments did not meet or equal a listed impairment and he continued to evaluate Norman's RFC. The ALJ found that Norman's RFC is as follows:

"Claimant has the RFC to perform sedentary work of lifting and/or carrying 10

---

[23]*Id.*

[24]*Leggett*, 67 F.3d at 564.

[25]*Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[26]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

> pounds, standing and/or walking two hours total in an eight-hour workday, and sitting six hours in an eight-hour workday. Claimant cannot climb ladders, ropes, or scaffolds, and can only occasionally perform stooping and crouching."

At step four, the ALJ found that Norman is able to perform his past relevant work as a customer service representative because the requirements of this work did not exceed his RFC. The ALJ based this conclusion on the testimony of the medical expert, Dr. Dorothy Leong. Dr. Leong testified that Norman can perform the lifting, carrying, standing, and walking requirements of no more than sedentary work as described by Lloyd Fatzinger, the vocational expert. The ALJ gave the opinion of the examining physician, Dr. Lei Zhang, little probative weight. Based on the determination that Norman could perform his past relevant work, the ALJ concluded that Norman is not disabled as defined in the Social Security Act.

## Norman's Allegations of Error

Norman claims that the ALJ erred in determining that he was not disabled as defined by the Act through the date of the decision and, therefore, not eligible for benefits. In particular, Norman contends that (1) the ALJ ruled at step 2 of the sequential evaluation of disability that Plaintiff's obstructive sleep apnea is 'severe,' but erroneously excluded this condition from the RFC determination at Step 4, and (2) the ALJ failed to follow the correct legal standard regarding the physical limitations assessed by Dr. Zhang, an examining physician.

**A. The ALJ Erroneously Excluded the Severe Obstructive Sleep Apnea from the RFC Determination at Step 4**

The ALJ determined that Norman's RFC is sufficient to perform sedentary work functions and that he is capable of sitting six hours and standing and/or walking two hours in an eight-hour workday. The ALJ reached his determination that Norman can do sedentary work based on the

7

testimony and opinions of Dr. Leong, Dr. Richard Peavey, and Mr. Fatzinger. The ALJ considered the obstructive sleep apnea in the determination of the RFC only to the extent he mentioned that Norman had been diagnosed with OSA and that his symptoms had improved. The ALJ did not further evaluate the intensity, persistence, or limiting effects of Norman's OSA.

Norman argues that his OSA, exacerbated by his morbid obesity, causes excessive fatigue, tiredness, and snoring, and that the ALJ failed to evaluate these symptoms and their limiting effects in consideration of his RFC prior to the step 4 determination. Norman further argues that his mental functioning was impaired by his OSA and that the ALJ should have addressed these difficulties when assessing Norman's RFC. When a claimant has a severe impairment that does not medically meet or equal a listed impairment, the ALJ must consider all of the impairments, even those that are not severe, in determining the RFC.[27] Norman argues that, because the ALJ found Norman's OSA to be severe at step 2, the ALJ had a duty to properly assess the limitations caused by the OSA at step 4.[28] Norman maintains that the ALJ failed to account for Norman's severe OSA and its limiting effects and that therefore the ALJ's determination of Norman's RFC was not supported by "substantial evidence," and that this was a reversible error.

In determining an individuals RFC, the ALJ is required to consider limitations and restrictions imposed by all of the individual's impairments, whether severe or not.[29] At step 2 of the ALJ's evaluation process, he found Norman to be severely impaired by his diagnosed OSA. In determining Norman's RFC, the ALJ only stated, regarding Norman's OSA, that Norman's

---

[27] 20 C.F.R. §§ 404.1545(e), SSR 96-8P, 1996 WL 374184.

[28] see, *Spears v. Barnhart*, 284 F.Supp.2d 477, 484 (S.D. Tex. 2002).

[29] 20 C.F.R. §§ 404.1545(e), SSR 96-8P, 1996 WL 374184.

8

symptoms had improved. At no point in the record did the ALJ explicitly state that Norman's symptoms had been completely resolved. Norman maintained that while his daytime drowsiness had decreased, it had not been eliminated and that symptoms of his OSA still impair his abilities. Specifically, Norman alleges that his mental functioning is impaired in that he has difficulties with remembering, understanding, carrying out instructions, using judgment when making work-related decisions, and responding appropriately to coworkers, supervisors, work-related pressure, and changes in routine or environment.

The Commissioner disagrees with Norman's assertions by stating, in part, that the ALJ properly assessed Norman's RFC and fulfilled his duty to base the RFC determination on all of the evidence presented. The Commissioner further alleges that Norman's contention that Norman still experiences OSA-related limitations is not supported by the medical evidence and, citing to *Johnson v. Bowen*, argues that when a condition is remedied or controlled with treatment, it is not considered disabling.[30]

The court in *Johnson* had medical evidence that supported the conclusion that "Johnson's reported symptoms *disappeared* with medication" (emphasis added).[31] Here, however, there is no medical evidence to support the conclusion that Norman's symptoms resulting from his severe OSA has completely disappeared with any treatment. Rather, Dr. Zhang states in her summary report that Norman's "daytime drowsiness seems to have improved but has not completely disappeared."[32] The SSA medical consultant, Dr. Richard Peavey, relied on Dr. Zhang's report in drawing his

---

[30] *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).

[31] *Id.*

[32] Transcript ("Tr.") at 169.

conclusions. In Dr. Peavey's report, he has no mention of Norman's diagnosed OSA; he neither credits nor discredits the diagnosis.[33] A few months later, Dr. James Wright affirmed Dr. Peavey's assessment, however, he included sleep apnea as a medically determinable impairment within his affirmation of Dr. Peavey's report that seems to fail to consider sleep apnea in its assessment.[34] He further noted in his affirmation that the SSA had not conducted a Mental RFC ("MRFC") nor a Psychiatric Review Technique Form ("PRTF").[35] Norman participated in a Split Night Polysomnogram study and a report was completed by Dr. Michael Figueroa. Dr. Figueroa stated in his interpretation that, despite treatment by CPAP machine and an improvement in his apnea, "the patient still continued to have some desaturations," and he stated his impression to be that Norman had Severe Obstructive Sleep Apnea with oxyhemoglobin desaturation.[36] Finally, Dr. Leong testified that OSA was one of Norman's severe impairments but did not state whether it did or did not have limiting effects.[37]

As the Magistrate Judge stated in the recommendation, given the ALJ's failure to provide an explicit "assessment" of any OSA-induced limitations or lack thereof, the Commissioner appears to argue that the ALJ implicitly found that Norman's RFC was unlimited by his OSA. However, substantial evidence does not support an implicit finding that Norman's RFC was unlimited by his OSA. There is no medical testimony, medical opinion, or other evidence that contradicts the

---

[33]Tr. at 186-193.

[34]*Id*. at 194.

[35]*Id.*

[36]*Id*. at 200.

[37]*Id*. at 42, 43.

assertions by Norman that his severe OSA limits his ability to sustain substantial gainful employment.

As the Magistrate Judge continued, the correct legal standards also fail to support an implicit finding that Norman's RFC was unlimited by his severe OSA. By definition, a severe impairment significantly limits the physical or mental abilities to do basic work activities.[38] Norman argues that the ALJ's step 2 finding that Norman's OSA was severe was "inherently contradictory" to the ALJ's findings in step 4 and his failure to "discuss the functional limitations imposed by the OSA."[39]

The Court agrees. The ALJ's inexplicable omission of the OSA from the RFC analysis in step 4 is contradicted by the determination of the OSA being "severe" in step 2. The court in *Spears* reasoned well when it evaluated the ALJ's failure to list the limitations of the severe impairments as determined in step 2:

> "A RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work related activities. Myers v. Apfel, 238 F.3d 617, 620 (2001). The purpose of assessing the claimant's RFC is to determine the work that can be done despite present limitations. Id.; see also 20 C.F.R. § 404.1545(a). The ALJ, however, did not include any limitations-basically contradicting the fact that he found her impairments to be severe. The SSA regulations provide that [a]n impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521. The Court, therefore, concludes that the ALJ did not apply the correct legal standard after making a determination of a severe combination of impairments. Failure to address Spears['] limitations related to her severe impairment is remandable error. See Myers, 238 F.3d at 620-21."[40]

Similar to *Spears*, here the ALJ did not include any limitations resulting from the OSA, contradicting

---

[38] 20 C.F.R. §§ 404.1521(a).

[39] Docket 13 at 4-5.

[40] *Spears,* 284 F.Supp.2d 477 at 483-484 (S.D. Tex. 2002).

his own finding that the OSA was "severe." Accordingly, the Court finds that the ALJ did not apply the correct legal standard after making a determination of a severe impairment. Failure to address those limitations related to the severe OSA is remandable error.[41]

This case should be remanded so that the ALJ may make an appropriate assessment of Norman's RFC based on all of his impairments and the resulting limitations.

**B. The ALJ Failed to Follow the Correct Legal Standard Regarding the Physical Limitations Assessed by Dr. Zhang, an Examining Physician**

The ALJ concluded that Norman was capable of performing sedentary work that required "standing and/or walking two hours total in an eight-hour workday, and sitting six hours in an eight-hour workday."[42] The ALJ based this determination largely on Dr. Leong's testimony, Dr. Peavey's assessment, and Dr. Wright's affirmation, and the ALJ afforded "less probative weight" to the examining physician's opinion.[43]

Norman argues that, in assessing Norman's physical limitations, the ALJ did not meet the correct legal standard, as set out in 20 C.F.R. §§ 404.1527(d), by failing to address the assessment of the examining physician, Dr. Zhang. Under that section, the ALJ is obligated to consider six factors and address them in substance in determining the weight that is to be given a certain medical opinion.[44] Norman maintains that had the ALJ evaluated Dr. Zhang's report under the correct legal standard, the ALJ should have granted Norman's application for disability benefits, and that by not

---

[41]*Id.*

[42]Tr. at 15.

[43]*Id.*

[44]20 C.F.R. §§ 404.1527(d).

12

doing so, the ALJ's error resulted in prejudice to Norman.

In determining how much weight is to be given to any medical opinion, the ALJ is to consider six factors: (1) Examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) "other factors."[45] This regulation only requires the ALJ to "consider" these factors, and he does not have to address any factor specifically. Rather, the ALJ must only address them in substance within his decision.[46] On review, the Court is only to "examine the substance of an ALJ's decision, rather than its form."[47]

The Commissioner argues that the ALJ's decision thoroughly discussed Norman's medical history, and is supported by substantial evidence. The Commissioner maintains that the ALJ fully evaluated all of the relevant factors as required by the correct legal standard. Specifically, he claims the ALJ discussed the nature of the treating relationship (factors (1) and (2)), the supportability of Dr. Zhang's opinion (factor (3)), and the consistency of Dr. Zhang's opinion (factor (4)).

The Magistrate Judge found the ALJ's discussion of the evidence to be accurate and supported by substantial evidence. In reviewing the factors considered, the Magistrate found that the ALJ had considered the physician's relationship, the supportability, and the consistency in making his determination. The Magistrate did not address either factor (5) or (6) because nothing in the transcript or decision suggested a specialization of Dr. Zhang's.

Dr. Zhang had a single "consultative evaluation" with Norman. At the most, the physician

---

[45]*Id.*

[46]*Witz v. Commissioner of Social Security Admin.*, 412 F.Supp.2d 601, 608 (E.D. Tex. 2005).

[47]*Id.*

13

is an "examining physician" relative to Norman. Generally, more weight would be given to a source who has examined the individual rather than a source who has not. An ALJ may decide to give less weight when doing so is supported by substantial evidence.[48] The ALJ makes it clear that he knew of, and thereby considered, the "examining relationship" by acknowledging Dr. Leong's testimony regarding the results from Dr. Zhang's examination.[49] By finding an "examining relationship," the ALJ implicitly determined the absence of a "treating relationship." In consideration of "consistency," the ALJ makes clear that Dr. Zhang's opinion is inconsistent with the opinions of Drs. Leong and Peavey. With regard to "supportability," the ALJ does not explicitly state how or why the medical evidence does not support Dr. Zhang's conclusion, but does support Drs. Leong and Peavey's conclusion.

In rejecting Dr. Zhang's opinion, the ALJ does not reason why Dr. Zhang's opinion is unsupported, but rather relies on its own proposition in determining that "less probative weight" should be given to Dr. Zhang's opinion.[50] The ALJ found that "the State Agency assessment of Dr. Richard Peavey . . . is well supported by the evidence as a whole."[51] Continuing, the ALJ stated that he found Dr. Leong's testimony, as to Norman's limitations, more persuasive than Dr. Peavey's.[52] Then the ALJ made his conclusion regarding the physical RFC of Norman.[53] Using his conclusion

---

[48] 20 C.F.R. §§ 404.1527(d)(1).

[49] Tr. at 16.

[50] *Id.* at 17.

[51] *Id.*

[52] *Id.*

[53] *Id.*

14

as his reason, the ALJ made a final statement regarding the examining physician's opinion: "for these reasons, less probative weight is accorded the assessment of Dr. Zhang."[54] The ALJ summarily rejected the opinion of Dr. Zhang by relying on his proposition that Norman had the RFC to perform sedentary work based only on the testimony of a non-specialty medical expert who had not examined Norman. Such a rejection is reason for reversal.[55]

Finally, while Dr. Zhang does not seem to specialize in any specific area, Dr. Zhang does make known that he is a Board Certified Physician in Physical Medicine and Rehabilitation.[56] Such a consideration should have been made when determining the "other factors" relevant in weighing the opinion of Dr. Zhang. Nothing in the record suggests that the ALJ considered this factor when determining that the testimony of a non-board certified medical expert should have greater weight.

The Court finds that the ALJ failed to address all relevant factors in determining the weight to be given to the opinion of Dr. Zhang. This finding does not preclude the ALJ from determining that less weight is due to Dr. Zhang's opinion after a consideration of all factors.

## CONCLUSION

For the foregoing reasons, the Court ACCEPTS IN PART the recommendation of the Magistrate Judge with regard to the erroneous exclusion of OSA from the determination of Norman's RFC, and overrules the recommendation of the Magistrate Judge with regard to ALJ's failure to follow the correct legal standard in weighing the opinions of the physicians. The decision to deny disability benefits to Norman is REVERSED and REMANDED to the Commissioner for

---

[54]*Id.*

[55]*Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

[56]Tr. at 173, 182.

further deliberation in accordance with this decision.

It is so ORDERED.

SIGNED this 18th day of July, 2011.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE